THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* Víctor FERNÁNDEZ PIÑÁN, Defendant and Appellant. SAME *v.* SAME.

Nos. 10,871 and 10,872. Argued December 5, 1945.—Decided December 13, 1945.

M. *García González* for appellant. *Luis Negrón Fernández, Acting Attorney General,* and *J. Rivera Barreras* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the court.

In these two cases the defendant was accused of carrying a prohibited weapon and of failure to register the same with the district chief of police of Caguas. The defendant has appealed from judgments of conviction in both cases.

There is no dispute as to the relevant testimony. The defendant was a lieutenant of the Auxiliary Police, which was organized for the duration of the war pursuant to Act No. 11, Laws of P. R., 1942 (p. 306). The Commanding Officer for Caguas of the Auxiliary Police testified that during October of 1942, at the request of the Insular Police, the Auxiliary Police were cooperating with the former in arresting the prostitutes who were communicating venereal diseases to soldiers, and that he had appointed the defendant, Ramón Torres, and Pablo García to do this work.

On October 20. 1942 the defendant was in the police station with Ramón Torres when an American soldier came in for help in locating a prostitute who had infected him. The defendant and Torres were assigned to this duty and went out with the soldier. One Pablo Merced, a friend of the defendant, went along with the group to show them where the woman lived.

While looking for the woman, Merced stopped at several places to inquire where she lived. At one such place, a store, Dámaso González and another man ran out past the three men. When they entered, the man operating the store explained that González was running because he had been trying to pawn a gun which was lying on the counter in a paper bag.

The defendant picked up the gun and told the store-keeper to close the store and to accompany him to the police station to tell his story of the circumstances of his possession of the gun.

The group started toward the police station. Their route led them past the place where the sister of the prostitute in question lived. While they were in front of this house, the defendant reflected on the virtue of the sister. Dámaso González, resenting this accusation, ran out of the house and got into an altercation with the defendant, as a result of which González cut the defendant in the back with a knife and the defendant shot González and a female bystander with th· gun involved herein. The defendant then gave the gun to one of his subordinates in the Auxiliary Police, Tomás Ramos Requena, who had appeared on the scene. An insular policeman arrived, and Ramos gave him the gun.

Section 4 of Act No. 11 of 1942 provides that "During the existence of a state of war between our nation and any foreign country or nation, the Governor of Puerto Rico may appoint, for a specified period, as many special police, without pay, as he may deem necessary. During the period of service of such special police, they shall have all the powers, faculties and duties of members of the Insular Police, and as such special police shall wear an emblem to be furnished them by the Insular Government." And under Act No. 14, Laws of P. R., 1924 (p. 114), members of the Insular Police may lawfully carry arms. The defendant contends that under these provisions of law he has not committed the offenses herein.

However, it is not necessary for us to determine whether the Auxiliary Police were as a general proposition empowered by law to carry arms. Here the defendant was carrying out a duty assigned to him as an officer of the Auxiliary Police. It is true that Act No. 11 was designed primarily to establish an Auxiliary Police for service during blackouts and alerts. But Section 4 does not restrict the Auxiliary

Police appointed pursuant thereto from performing other duties duly assigned to them in aid of the war effort. And the task on which the defendant was engaged herein clearly came within that category.

We are therefore faced with a situation in which the defendant, while pursuing a lawful police duty, was confronted with the evidence of another crime. We think that under such circumstances he was entitled to seize the gun, and to require the store-keeper to accompany him to the police station to furnish an explanation of his possession of the gun. While no cases directly in point have been cited, we believe that under the facts herein the possession of the gun by the defendant was accidental or casual and therefore that his convictions on the charges herein cannot stand. Cf. *People* v. *Borges*, 23 P.R.R. 486; *People* v. *Suazo, ante,* p. 27. The fact that the defendant may or may not have been guilty of another crime for shooting González and the bystander has no bearing on the cases before us.

The judgments will be reversed and new judgments will be entered acquitting the defendant.